Good morning, Your Honors. Judith Lott, appearing, Forsook Jindersingh, the appellant in this matter. May it please the Court, because the Board of Immigration Appeals affirmed virtually without analysis, actually completely without analysis, the decision of the immigration judge, I will be addressing my arguments to the immigration judge's decision, which is found in the record at pages 26-34. There are two issues at issue in this case, the first one being the timeliness of Mr. Singh's filing for political asylum, and the second one being Mr. Singh's credibility. The first issue is important because it changes the burden of proof with regard to establishing the likelihood of future fear that Mr. Singh will experience if he is returned to India. However, I believe that once I finish with the credibility analysis, I will have established that he has met the burden under both the political asylum, which is the well-founded future fear, and under the withholding of removal standard, which is more likely than not. Now, the issue with regard to the filing, it's undisputed in the record that Mr. Singh will be returning to India. I'm looking at your brief on appeal. I don't see anything about the timing, the filing. Is that right? I believe it was addressed, Your Honor, and maybe not headed properly, simply under the course of proceedings where I pointed out that But you're not raising, really, the issue of the one-year filing, which relates only to the asylum claim. As I understand your brief, we're only going to deal with the withholding and the torture claim if there is one, is it? Well, the judge, I'm happy to do that, Your Honor. I just want to point out that in the argued that the one-year bar should not apply because his case was filed 11 days late and it was executed. Whatever happened there, I'm just asking what's being raised on appeal, and all I see in your brief is the credibility issue, which goes to withholding and the claim of convention against torture. To address the credibility issue, Your Honor. As a preliminary matter, I want to point out that if this if Mr. Singh is determined to be credible at any point in the future, the description of the harm that he experienced in India would certainly rise to the level of persecution. This is not an individual who's claiming verbal threats or remote harm. This is brutality by government officials. The fact that if we found him credible, we would probably have to return it to the BIA for those other issues since they didn't decide them. Thank you, Your Honor. So the first issue which I believe has been resolved and the easiest one for me to address is the fact that the immigration judge interlineated an incorrect correction on the Respondent's application, and the government has in fact conceded in its responsive brief that Mr. Singh testified credibly with the corrections as they should have been made. This appears in the responsive brief, footnote 2, page 11. So unless the Court has any other questions about that, I'll move on. The second issue is whether or not substantial evidence in the record supports an adverse credibility determination based on the fact that Mr. Singh did not discuss the creation of an independent Sikh state known as Khalistan. On this issue, I would argue that the judge's holding is random. For example, Mr. Singh did discuss the history of his party's leader, known as Mr. Simranjit Singh Maan. This is in the record at page 60. I guess we have to uphold the IJ's credibility finding unless there is substantial evidence of an adverse credibility determination. Now, what is this substantial evidence? Well, on this particular issue, I've broken my argument down to address the three issues that I see that the judge had a problem with. The first is Mr. Singh's failure to mention Khalistan. The second is the passport issue, which I believe is the most problematic. And the third issue is the way Mr. Singh described the identity of the place where he was mistreated, whether it was whether CI and CIA are two different entities. So you're doing just the first issue? I'm dealing just the first. Yes, Your Honor. What do you mean by the first? The first issue is Mr. Singh's failure to discuss the independent state of Khalistan. Okay. You know, I would spend most of my time, I think, on the issue of whether his statements that he had not left the country before and that he was in the country during the period in question, whether he was in the country during the period in question. And whether that's undermined by anything in the document, the passport, or his, that credibility issue was one of the grounds he relied on. As I understand it, there was something, the one he conceded, then there was something about not mentioning Khalistan, then there was CIA instead of CI. And the final one was the one I just referred to about whether his credibility is undermined by anything in the document. And whether that's undermined by the testimony and the documentary evidence about his leaving the country previously. Well, from a common-sense perspective, I would agree with the Court that this is a problematic piece of evidence, that this is a passport that the gentleman is using that appears to have stamps and visas. No, I agree with the Court. I didn't say anything about it. I said that's the issue. That's one of the grounds that the I.J. relied on in making his credibility determination. So if he was correct in that determination, then you lose his case. So your job is to tell us why he was not correct in that determination. Well, Mr. Singh testified consistently throughout the hearing that he had nothing to do with the preparation of his passport. That it was his photograph, but that the agent prepared the passport. He has no idea whether the stamps are genuine or fake, and that it was not held in his possession. It was held in the possession of the person, the captain of the boat, I believe. So he, Mr. Singh's testimony is very clear that the passport, nothing in the passport was his doing other than to provide the agent with a photograph. So my argument here is that normally in immigration litigation, we're bending over backwards to try to prove to the Court that something that we've presented to the Court is a genuine document, that it's not a fraudulent document. Here's Mr. Singh telling the Court, I have no idea if this is a genuine document. I don't know how the agent got these stamps in the passport. I didn't travel on this passport. I didn't hold this passport. I paid somebody to get this passport for me so that I could flee the persecution of my country. We have no independent analysis of the passport. Well, if he knew nothing about it, isn't he perpetuating a fraud by buying a passport that has all sorts of stamps on it? Even, I mean, he obtained that passport. I believe the Court has held, and I have the site behind me, that to flee from persecution, the agent obtained the passport. It will excuse certain, certainly not harm to an individual, but will excuse unlawful entry into the country. Well, in any event, that's not the issue, is it, on which the I.J. relied. We're limited to considering the issues in which he relied, and he didn't rely on any claim of fraud. In any event, it was his father who got the passport. But what he says is if it undermines his credibility, he doesn't believe that that's how he got the passport. Or if it does, he believes the passport shows that he lied about not being out of the country. Well, the Court didn't point to any other inconsistency in the record that has any merit, in my opinion, and I'm happy to go back to the others. The Colifant issue, for example, is irrelevant because imputed political opinion. Let's stick to this issue for a minute, because as you said, and not a choice of words I would have used, it's the most problematic issue. Yes, Your Honor. All right, that means it's the one that's the most difficult for you to overcome. The I.J. was wrong in basing credibility on this ground. Because it required speculation and conjecture. There was no analysis as to the genuine nature of the stamps or the visas, and it goes directly the immigration judge's finding is in direct contradiction to Mr. Singh's testimony. Without other incredible testimony, it was speculative and it was an abuse of discretion for the immigration judge to say, well, everything else here, with the exception of a couple remote issues, matches. The description of the brutality was never attacked. Simply, the only thing that the judge found to be generally, genuinely in contradiction to Mr. Singh's testimony is this document that Mr. Singh himself testified to. He doesn't even know if anything in it is real. I would argue that without any analysis about the material aspects of the document, the aspect of the persecution, that the judge abused his discretion in holding that this document undermined the whole claim when there was nothing inconsistent about the claim. All right. Do you want to talk about any of the others? Well, I would briefly touch on the issue of imputed political opinion, which does not require that a person that's been persecuted hold any opinion at all. Therefore, even if Mr. Singh didn't know what Khalistan was, I would argue that he would still be protected under imputed political opinion, which is the police, obviously, imputing an opinion to the person. I want to point also to the fact that Mr. Singh's photographs were taken and kept in the police station. This goes to his fear of future persecution. In other words, his name and his photographs are on file with the police. I want to remind the Court, which I'm sure it's aware, that when the persecutor is the government, which it is in this case, the persecution is presumed to be countrywide. That wasn't addressed in the opinion, but it is something for consideration since we're just talking about withholding of removal. Also the fact that after his last arrest, Mr. Singh was hospitalized. He left the hospital on a stretcher through the back door so that the police wouldn't see him going out the front. All of this, I would argue, leads to a finding that it is more likely than not that he would be harmed again. We're only really considering the issue of credibility here. Okay. Well, then, you know, I'm sorry. Credibility, particularly, is where he was when he says he was in India until April 2002. Yes, Your Honor, yes. And, you know, again, I would point to the Seafarer card, which the government has said undermines his credibility, but the Seafarer card has no stamp in it other than the stamp that says he's going to embark on his first assignment in April of 2002. So I would argue that the Seafarer card is consistent with Mr. Singh's testimony. There's nothing in the Seafarer card which shows that he had departed India earlier, only this passport, which he had nothing to do with the preparation of. That's just what he said. Yes. The passport is a document. It's, it's. I'm sorry. Do you have any documentary support for your argument? We have the affidavits of individuals that corroborate the testimony. We have the declaration attached to the asylum application, and we have the testimony of the witness himself. The main argument, Your Honor, is that without an adverse credibility determination made to the material aspect of the harm, the immigration judge abused his discretion in finding that Mr. Singh's testimony on the issue of how he obtained the passport was not credible. There's no doubt the passport has stamps on it. What we don't know is how those stamps got there. So we have the testimony of, we have the credible testimony of the asylum applicant, and then we have speculation and conjecture. That's. The immigration judge, and I quote, concludes it as a fact, The respondent definitely did not leave India for the first time in his life in April 2002. And further, the respondents' travels in this respect certainly call into question each and every one of the arrests and detentions that he states he suffered in India in the years 2000, 2001, 2002. Yes, Your Honor, I see that. He's got to overcome those findings with something. Well, I would argue that credible testimony is evidence and that there is credible testimony in this case that overcomes the finding. All right, do you want to save the rest of your. I'd like to save the rest of my time. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, my name is Ian Garrix, and I'm representing the respondent here, Attorney General Mukasey. As the Court has, there are two primary issues here, and the first one to raise is, as the Court has already stated, Judge Reinhart has stated that the denial of the asylum claim as untimely has been waived because the petitioner did not raise that in the appeal to the BIA in that specific appeal or in his appellate brief, so that issue has been waived. And the only other issues are whether the claims were properly denied based on adverse credibility with regard to withholding of removal and protection under the convention of torture. With regard to that issue, I.J.'s decision was properly supported by substantial evidence, and there is no evidence that would compel a decision that the petitioner was credible on those claims. And also, these issues that the Court has already addressed with Petitioner's Counsel go to the heart of Petitioner's claim. Primarily, I'll just cut to the chase, this issue with regard to Petitioner's passport and a seafarer's identification card. It's interesting that in your brief you don't mention the seafarer's identification card. Your Honor, I do admit that the brief did not emphasize this. Not emphasize. Mention. I do believe it is meant to. It's in the title, but not anywhere discussed. When you discuss the documents, you only discuss the passport. I think it was in the factual basis. But the issue has not been waived, though, on appeal with regard to the I.J.'s finding on the seafarer's identification card and the passport. And just to alert the Court as to facts that are in the administrative record, that's what I would discuss now. But the passport is more convincing even than the seafarer's identification card. As the immigration judge correctly noted that was drawn out in testimony, or did just a few points, as the government has stated, an adverse decision as to credibility has to go to the heart of a claim for withholding of removal or denial of protection. The point here is on the dates that are alleged by Petitioner is when he was beaten in India in 2000, one event and two times in 2001. Those dates occurred after the notations in the passport, which are in the record, and I can point those out to the Court, where there are notations that, and the I.J. referred to these at the passport. But at administrative record, page 341, the passport shows an entry that it was issued in Athens, Greece, in November 2001, and also that it was previously issued in Athens in 1997. How doubtful is the passport, the information in the passport is correct? That would be contrary to his testimony. The question is, is the finding proper? The testimony by the applicant is that his father told him to wait and he would get him a passport to get him out of the country, and then his father acquired a passport, which was not a legitimate passport, but some kind of passport that an agent acquired, and it's an agent whose business it is to get people out of the country into the United States, and he took a group of people on a boat and had them leave the boat in Louisiana, and he was a smuggler or whatever you'd call him, whatever the title is, and that that's how his father arranged for him to come to this country, including obtaining a passport that was false. That's the applicant's testimony. You'd have to find that that testimony was not true, because he admits the passport information isn't correct, or he contends it's not correct under his version of what happened. Your Honor, you stated that he contends that it was not correct? Yes. In the record, he does, on cross-examination, he does admit that it's his name. Yes. It's his name, it's his photo, and that has his date of birth, and he says it was issued to him, whether or not. What he says is that these stamps that are in the passport, that information he doesn't know anything about. He asked his father got an agent to get a passport that would obviously have his name, his photo, and have basic information as to him. He said he bought a false passport. His father bought it through the agent who provides false passports and smuggles people. I don't think there was testimony anywhere saying it was a false passport. The examination went to that issue of whether it was real or not, but I don't think there was any admission by the petitioner that it was a false passport. He said his father said he would get an agent to obtain a passport for him. That does not mean it's false. Well, he said, I have no idea how these stamps got on here. This is the kind of passport the agent got for me. Right. Either way, petitioner cannot have it both ways. Either the passport and the seafarer's identification are true, as the I.J. found, and that would show that he was not in the country at the time of these meetings in 2000 and 2001, or if the court finds the I.J. And the I.J. did refer to this that if it were not true, then the I.J. wouldn't even know if this is the same guy in the passports, and a case cited in the government's brief for Raw v. Ashcroft, 348 F. 3rd at 1156, states that date of entry, identity, this isn't a decision in this circuit, date of entry, identity, and membership in a persecuted group are material elements of an asylum claim. Here, the immigration. Through the asylum claim. Right, but these are similar elements that would apply to a withholding of removal claim. I mean, similar standards in that sense, that the date of entry and identity are critical to that. And here, if the I.J. found that these passports and identification were true. Anything inherently incredible about people acquiring false passports? No. It certainly happens all the time that people acquire false passports. And don't they put their names and pictures on those passports? That could be the case, but here, the testimony by the petitioner says that there's no testimony or finding that it was false, and the petitioner does not come out and say it was false. Even if it were false, if I just may elaborate on this point, if the immigration judge were to find that was false, as this Court has stated, identity is a vital element to these kinds of applications. And if the judge did not know that it was him or not, he could not make that claim or that finding, that he was the same fellow, Sukhchinder Singh, that all these letters are alleging that this guy was beaten in 2000 and 2001. The Court would have no basis to make that connection. So in either case, either if this passport was true or not, if it were true, it shows that he was not there at the time of the beatings. If it's false... Where does it say that if it's false, he won't know who he is? It is in the record. It's when the IJ and... No, in the IJ's report decision. It's in the IJ's decision, and I can find that for you. I don't think there was any question that he testified that he didn't have a passport, that his father said he would get an agent who would obtain a passport for him, and that this was the agent who accompanied him and other people that were being smuggled into the country. That's not your understanding of his testimony? He did talk about an agent. That is correct, that he obtained the passport, so that he did not have knowledge about these stamps. But there is no testimony that they were false or that those stamps... The petitioner never said those stamps were false. He just said he didn't know about them. The IJ had to assume this is his travel document. It's true he's admitted that it's him in the picture, his date of birth. And as forecast, that is a relevant fact. This is on page... This is on page 32 of the administrative record in the IJ's decision. If an agent prepared these documents for the respondent, then they are documents that do not indicate with any certainty what might be the respondent's true identity. If an agent did prepare these documents, and if these documents are therefore false documents or documents obtained in a regular manner, there is no reason for the documents to contain the notations and travel stamps on them that the court has previously referred to. And as stated, the government has cited to the case of Farabi Ashraf, where certain elements go to the heart of a claim, including identity, date of entry. So the government would submit on this point that if the documents are true, he did not prove that he was in India at the time of these beatings. If they're false, there's no basis to show that this is the same guy that actually suffered. This is the Sukhchinder Singh that suffered the beatings in India. But there are additional points that the government would like to point out for the findings, which the court already discussed with petitioners and counsel. And as stated in the Farabi Ashraf case, date of entry is another material element of a claim. And in this court, there was considerable testimony about what date the petitioner actually entered the United States for a long time. It's a material element of an asylum claim. Correct. But the fact that he was, even though the immigration judge may have not made a specific finding that he was incredible as to his date of entry, the flip-flopping on that issue showed... We only review what the immigration judge states in his decision as a basis for his decision. There may be a lot of other reasons that could have supported it. Right. And the government's pointing out that that corroborates the inconsistency in the testimony. And with regard to the other, the final two points raised by petitioner's brief, the mention that the goal of having an independent Sikh state known as Khalistan and then the inconsistencies between the testimony between the CIA and CIA, the immigration judge did draw out questions about the applicant, the petitioner's knowledge of this party he alleged that he belonged to, the Shurah Mani Akali Dal. And in the record, there are numerous, in the record with the country reports, there are numerous references that traditionally orthodox Sikhs have been seeking over a long period of time an independent Sikh state. And rather, the petitioner never at any time mentioned that, but he did talk about obtaining fair crop prices and access to water. And there are numerous, numerous... Let's ask why he joined the party, right? What attracted him to the party? He alleged that he was on his basis of being a Sikh, but what he did say about the goals of the party were for fair crop prices and access to water. He did not mention anything about Khalistan, and that was a base since those references are in the country reports in numerous, numerous sections. That was another corroborating fact that he had little, perhaps was not a member of this party. And finally, with regard to the CIA or CI, this is a confusing issue, but in his written statement for application, the petitioner did refer to the CIA as some police agency in India, and then later on at the merits hearing talked about a CI. The government has reviewed it based on the documentation. Just to clarify this point for the court, the IJ in his decision did refer to a CIA, but the record, as pointed out in our brief, does not really refer to CIA, but there is a CBI, Central Bureau of Investigations, and that's referred to in all these country reports as well. But those two findings regarding the CIA or CI or the Khalistan are not necessary for the primary finding that he was not credible as to whether or not he was in India at the time of the beatings. Are you really relying on anything other than the finding that there's a doubt as to whether he was ñ he's not credible as to whether he was in India because of the passport? Also on the immigration judge's findings that that's not the only reason. The immigration judge's findings that he did not have a sufficient knowledge of this party show that ñ Okay. You're relying on that one also. And also on inconsistencies in the testimony regarding the CI, CIA. If someone's experienced this many beatings with a particular police organization, they would probably know that it's CBI, which is in the record at numerous places in the country reports, not CI. Here, the average person would talk about the FBI or CIA in the United States, but not call it the CI or the FB. These are just kind of ñ It's insignificant, isn't it? Well, it's just corroborating the immigration judge's denial of the claims based on adverse credibility. And to summarize the final point, if for some reason the court does, as the court previously stated, the only issue here is really whether or not the denial of these applications, whether or not the court would be compelled to find that the petitioner was credible if the court does feel it is compelled, it would have to send it back to the BIA for further determination regarding the claim of withholding a removal, persecution, because the immigration judge, as Judge Reinhart pointed out, did not go to those issues because it denied the applications based on the adverse credibility and the untimeliness of the asylum claim. Counsel, let's go back for a moment to the passports. I gather it's your position that you need to only produce substantial evidence to support the immigration judge's finding. And I gather your position is further that those passports, whatever bugs there are in them, are, in the first instance, substantial evidence. Is that correct? Yes, Your Honor. Yes, in addition to the passport, also the seafarer's identification in both of those documents, which the petitioner has admitted were his, show that he was, in fact, not in India. He said that he had never left India before April 4, 2002. And those documents go way back to 1997, which the immigration judge just has no reason for believing someone that's either submitting false documents, travel documents to the court, or was not in India at the time of the beating. When you say he admitted they were his, what he admitted was that they were given to him by an agent employed by his father just before he left on the trip. He had never seen them before, he said. If that's what you mean by admitted they were his. Correct. He did say that he had never seen them before, didn't know what the stamps were, but he did admit that these were indeed his travel documents with which he came or traveled. He said, and whose passport did you have with you? I don't know. He prepared them after he's talked about the agent. Was it your passport? It was. It perhaps was. Everything was going right. Do you have anything at all to do with obtaining the passport? We didn't get anything. We had nothing to do with it. Our father talks to them. So, yes, he admitted they were his in the sense that he admitted that he was given them by the agent employed by his father just before the trip. Right? That's what he admitted. Yes, he did admit that, but there's no testimony that these were false documents in any way or that these stamps were false, and that would compel the conclusion, if that's the only evidence as to his identification, that the immigration judge has to accept that it's true and those stamps, I mean, because there was no testimony that they were false. He said he didn't know anything about them. He said, I don't know anything about these stamps. They came with the passport, is what he said. Right. But regardless, even if, and again, it goes back to that point, he can't have it both ways. Either they're true. He wasn't in India because the passport and CFARE's ID show that he left India before these meetings, or that they're false. He's not, there would have been a credibility doubt as to his identity, which the court has held is essential for these types of claims. And that's, again, a paragraph. Thank you. If there's nothing further, the government would submit it. Thank you. Thank you, Your Honors. Just a couple of brief points. The first issue is that I believe the government may have confused evidence. Could you speak up a little bit? I believe the government may have confused evidence and also confused the way that evidence got into the record. I didn't read the CFARE identity card to have any stamps on it that indicated a previous departure from India. The second thing is these documents, the government has alleged that Mr. Singh submitted false evidence to the court. These were not submitted by Mr. Singh. These documents were turned over to ICE agents by the captain of the ship after Mr. Singh disappeared in the United States. That's the first point. The second point is there are two additional identity documents in the record. The first is an Indian driving license, a three-page Indian driving license, which appears in the record at pages 430 through 432. There's also a school metric certificate. That does not have a photograph on it, but it's in the record also to corroborate identity. The Indian passport, excuse me, the Indian driving license does have a photograph on it. Lastly, in the record at pages 427 through 432, there are the affidavits from the political party, a father, and a village leader which corroborate the testimony of Mr. Singh regarding the harm that he experienced by the Indian police. So that was to the earlier question about other evidence other than testimony that supports Mr. Singh's version of things rather than the reliance on the passport that we have no idea how it was obtained. Was there any affidavit from his father? Yes, Your Honor. Did his father say anything about the passport in his affidavit? Not specifically. Generally? You mean the answer is no or it's not specific? It does not mention the passport. The answer is no. That's true, yes. It does not mention the passport. Thank you. Thank you. Case just argued will be submitted. The Court will stand in recess for the day.
judges: Nelson, Reinhardt, Oberdorfer